ALBEMARLE WESTON STREET, LLC *v.* CITY OF HARTFORD
(AC 28125)

DiPentima, McLachlan and Hennessy, Js.

Argued September 10—officially released December 11, 2007

*John Rose, Jr.*, corporation counsel, with whom, on the brief, was *Lori Mizerak*, assistant corporation counsel, for the appellant (defendant).

*Lisa Silvestri*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. In this municipal tax appeal, the defendant, the city of Hartford, appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Albemarle Weston Street, LLC, from the assessor's interim revaluation of its property. On appeal, the defendant claims that (1) the court's factual finding as to the use of the subject property was clearly erroneous in view of the testimony presented at trial and (2) the court improperly sustained the plaintiff's appeal because General Statutes § 12-55 (b) authorizes an interim revaluation under the circumstances of this case. We affirm the judgment of the trial court.

The following evidence was presented to the court. In February, 2005, the plaintiff acquired property at 92 Weston Street in Hartford, on which is located a single-story, multitenant commercial building. The building was constructed in 1978, contains approximately 48,000 square feet and has forty-two rental spaces with separate entrance doors and movable walls. It has electrical

outlets spaced throughout in a manner to accommodate either office or warehouse use.

Pursuant to General Statutes § 12-62, the defendant engaged the services of Cole, Layer and Trumbull to collect property data in connection with its 1999 revaluation. An employee of that firm personally inspected the subject property and recorded that 30 percent of the total building area, or approximately 14,400 square feet, was allocated for use as office space and 70 percent of the total building area, or approximately 33,600 square feet, was allocated for use as warehouse space. Using that data, the assessor determined that the fair market value of the property was $1,434,600, as of October 1, 1999, with an assessed value of $1,004,220. The then owner of the property did not challenge the valuation.

The next general revaluation in Hartford was scheduled for 2003. The defendant began the process of reassessing the real estate in the city. In connection with that revaluation, the assessor mailed a letter to the owner of the subject property on December 16, 2003, indicating that the assessed value of 92 Weston Street was $1,365,630 as of October 1, 2003. The owner retained the services of an appraiser, William Karamitis, to meet with the assessor to discuss the claimed excessive valuation of the property.

At that meeting on January 5, 2004, Karamitis reviewed comparable sales from his appraisal with a staff member of the assessor's office, Sanya Ahn, and advised her that 19,900 square feet of the building was being used as office space. Ahn recorded the information provided by Karamitis on an internal review form. Before the 2003 grand list was certified, however, the city council passed a resolution on May 24, 2004, to delay the implementation of the 2003 revaluation of all property until October 1, 2006; see General Statutes

§ 12-62*l*;[1] and to freeze the grand list "at its current rate" (in this instance, the 1999 assessment).[2]

On June 4, 2004, the assessor mailed a revised notice of assessment change to the owner of 92 Weston Street, in which the assessed value of the property was determined to be $1,392,090 as of October 1, 2003. In response to the owner's inquiry regarding the increase in its property assessment, the assessor indicated that the assessment was correct and had been changed because of "an error in the description of your property" that had been discovered in the process of gathering information for the postponed 2003 revaluation. Specifically, "[t]he original listing had 33,608 square feet of light manufacturing and 14,404 square feet of office. The corrected sizes are 4,801 [square feet] of retail, 23,526 [square feet] of warehouse and 19,685 [square feet] of office. Using the correct[ed] description gave the assessment of [$1,392,090]."[3] At trial, the assessor

---

[1] The legislature enacted Public Acts, Spec. Sess., May, 2004, No. 04-2, § 32, effective May 12, 2004, and codified as General Statutes § 12-62*l*, and also amended, in § 33 of the public act, General Statutes § 12-62 to provide that a municipality could postpone the 2003 revaluation.

[2] General Statutes § 12-62*l* provides in relevant part: "(a) Notwithstanding any provision of the general statutes, any municipal charter, any special act or any home rule ordinance, any municipality required to effect a revaluation of real property under section 12-62 for the 2003, 2004 or 2005 assessment year shall not be required to effect a revaluation prior to the 2006 assessment year provided any decision not to implement a revaluation pursuant to this subsection shall be approved by the legislative body of such town or, in any town where the legislative body is a town meeting, by the board of selectmen. Any required revaluation subsequent to any delayed revaluation effected pursuant to this subsection shall be effected in accordance with the provisions of said section 12-62. . . .

"(b) The assessor or board of assessors of any municipality that elects, pursuant to subsection (a) of this section, not to implement a revaluation of real property for the 2003 assessment year shall prepare a revised grand list for said assessment year, which shall reflect the assessments of real estate according to the grand list in effect for the assessment year commencing October 1, 2002, subject only to transfers of ownership, additions for new construction and reductions for demolitions. . . ."

[3] For the purposes of property assessment, space allocated for office use has a higher value than that allocated for warehouse use.

testified that the subject property had been revalued at that time using the 1999 value levels and schedules but using the new information provided by Karamitis.

The plaintiff, which had acquired the property in February, 2005, appealed to the defendant's board of assessment appeals, which upheld the valuation. The plaintiff then appealed from that decision to the Superior Court, claiming that the increase in the assessment was made unlawfully and constituted an ultra vires action. Following a two day trial, the court issued its memorandum of decision sustaining the plaintiff's appeal. The court found that there was "no support for the assessor's claim that a mistake occurred in the process of the 1999 revaluation that would provide a basis for the assessor to make an interim revaluation of the subject property." This appeal followed.

I

The defendant first claims that the court's factual finding, i.e., that no mistake had been made in the determination of the amount of square feet used for office space when the subject property was assessed in 1999, was clearly erroneous. Specifically, the defendant argues that because Karamitis stated that 19,900 square feet in the building were utilized as office space in 2003, the court should have concluded that the same amount of space was used as office space in 1999. This conclusion must be reached, the defendant claims, because the testimony submitted at trial established that the building was the same size in 1999 and 2003, and that no building permits had been obtained to increase the amount of office space between 1999 and 2003. According to the defendant, building permits would have been required to increase the amount of office space from 14,400 square feet to 19,900 square feet. We disagree.

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Electrical Wholesalers, Inc.* v. *M.J.B. Corp.*, 99 Conn. App. 294, 301–302, 912 A.2d 1117 (2007).

From the testimony and exhibits presented at trial, the court reasonably could have concluded that subsequent events caused the use of office space to increase from 14,400 square feet to 19,900 square feet by the time the 2003 revaluation process occurred. It is undisputed that a personal inspection of the property was made in connection with the 1999 revaluation and that the inspector noted that 14,400 square feet of that building were being used as office space. Lisa Sadinsky, a member of the plaintiff limited liability company, who also was involved in the management of the commercial property, testified that the building was designed as "flex space" to accommodate changes in the tenant mix. She indicated that it was built as a "vanilla box" having "four white, plain walls" with electrical outlets spaced appropriately for office or warehouse use. Sadinsky further testified that the rental units could be converted from warehouse space to office space, without any construction, by simply adding desks and chairs and other office equipment. According to the assessor, building permits are not required if the conversion of space does not involve new construction.

From that testimony, it is evident that the court reasonably could have found that "there was insufficient evidence presented to support the [defendant's] contention that its appraiser . . . made a mistake during

its inspection of the subject property for the 1999 revaluation year. The very nature of this property is to be flexible, and it would not be unusual for there to be an increase or decrease of office, retail or warehouse spaces between the 1999 revaluation and [the] 2003 revaluation, even in the absence of building permits." We conclude that the factual finding of the court was not clearly erroneous.

## II

The defendant next claims that the court improperly sustained the plaintiff's appeal because § 12-55 (b) authorizes an interim valuation, allowing an assessor or board of assessors to equalize the assessments of properties in the municipality even when there is no mistake.[4] At oral argument before this court, counsel for the defendant claimed that he had made a bifurcated argument at the time of trial: (1) that the interim assessment was made to correct a mistake made in the 1999 assessment relative to the amount of square feet used as office space; and (2) that § 12-55 (b) authorized the assessor to make an interim valuation, in his watchtower role, to equalize property assessments in the municipality. From a thorough review of the record, including the trial court file and posttrial briefs, we conclude that the defendant's second issue was not distinctly raised at trial.[5]

---

[4] General Statutes § 12-55 (b) provides in relevant part: "Prior to taking and subscribing to the oath upon the grand list, the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law. The assessor or board of assessors may increase or decrease the valuation of any property as reflected in the last-preceding grand list, or the valuation as stated in any personal property declaration or report received pursuant to this chapter. . . ."

[5] "We may take judicial notice of the contents of the court's file." (Internal quotation marks omitted.) *Dockter* v. *Slowik*, 91 Conn. App. 448, 459 n.7, 881 A.2d 479, cert. denied, 276 Conn. 919, 888 A.2d 87 (2005).

The operative complaint alleged that the assessor reassessed the value of the plaintiff's property without authority to do so and that the change in valuation was unlawful. By way of a special defense, the defendant claimed that the assessor "corrected the misstated market value of the property . . . to reflect the additional office space valuation . . . ." The testimony of the assessor was that the 1999 assessment figure reflecting office use of 14,400 square feet was incorrect and that the correct figure should have been 19,900 square feet.[6] Significantly, the court and counsel engaged in a colloquy and agreed that the issue to be determined was the amount of office space in the building in 1999.[7]

[6] The assessor testified as follows:

"[The Plaintiff's Counsel]: Is it your position, or your opinion, that Mr. Karamitis in his statement in the meeting with Ms. Ahn, was correct in stating that there were 19,900 square feet of office?

"[The Witness]: That's what we relied on.

"[The Plaintiff's Counsel]: And is it also your position that in 1999 that figure was also the correct figure, 19,900?

"[The Witness]: That was our opinion that we—that it was really 19,900, and we had something other than that listed, so we made the correction.

"[The Plaintiff's Counsel]: Okay. So, is it your opinion then—that the 1999 figure of 14,000 square feet of office space was actually not correct?

"[The Witness]: Yes.

"[The Plaintiff's Counsel]: And it was not correct in 1999?

"[The Witness]: That's because we had no other building permits to show that they've changed it since then.

"[The Plaintiff's Counsel]: So, other than your review of the building permits, and what was or was not in them, and other than Mr. Karamitis' statement, did you rely on anything else in changing the assessment with regard to the amount of office space?

"[The Witness]: No."

[7] The following colloquy occurred:

"The Court: Well, it seems that the key issue in this case is, what was the square footage of the subject property on October 1, 1999? Was it 14,000 square feet or was it 19,900 square feet? That's the issue.

"[The Defendant's Counsel]: I don't disagree with that.

"The Court: So, the question, at least, that is, in the mind of the court, is, what's the evidence to show the property was 19,900 on October 1, 1999, rather than 14,000 square feet in 1999? That seems to be the issue. Does counsel disagree?

"[The Plaintiff's Counsel]: I don't disagree. I maintain my objection to the—what the square footage was in 2005."

The case was tried before the court on that basis. Neither the assessor nor the defendant ever claimed that the interim revaluation was made in order to equalize the assessments of property in Hartford. The entire premise of the defendant's defense was that the assessment of the plaintiff's property was changed to reflect the corrected value of the property because the information on which the valuation had been based, 14,400 square feet of office space, was incorrect. The defendant argued that once the mistake had been discovered, it was the assessor's duty to correct it and that he had authority to do so by the provisions of § 12-55 (b). That authority, however, was claimed to be by virtue of the statute's reference to an omission "by mistake . . . ." General Statutes § 12-55 (b). No testimony or other evidence was presented that indicated the change was made to equalize the tax lists.

We decline, therefore, to review the claim that an interim revaluation of the plaintiff's property could be made pursuant to § 12-55 (b) in order to equalize the assessments of property in Hartford.[8] The defendant did not present that theory to the trial court. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Citation omitted; internal quotation marks omitted.) *Ingels* v. *Saldana*, 103 Conn. App. 724, 730, 930 A.2d 774 (2007). "For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both

---

[8] We recognize that an assessor, in his or her watchtower role, has the authority, pursuant to § 12-55, to make certain interim changes in the assessments of properties even absent a "mistake." See *Matzul* v. *Montville*, 70 Conn. App. 442, 447–48, 798 A.2d 1002, cert. denied, 261 Conn. 923, 806 A.2d 1060 (2002). For the reasons outlined in this opinion, however, we do not reach the issue of whether the defendant legally could increase the assessment of the plaintiff's property to equalize tax lists in an interim valuation on the basis of an increase in office space that occurred after the 1999 assessment.

to the [court] and to the opposing party." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 680, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

The judgment is affirmed.

In this opinion the other judges concurred.