******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# IN RE ZAKAI F.*
## (AC 41531)

DiPentima, C. J., and Alvord and Bear, Js.

*Syllabus*

The respondent mother appealed to this court from the judgment of the trial court denying her motion for the reinstatement of guardianship of her minor son, Z. The mother voluntarily had agreed to relinquish temporary guardianship of Z to his maternal aunt, the petitioner. Subsequently, when the mother requested that the petitioner return Z to her care, the petitioner did not respond and, instead, filed a petition for the custody and guardianship of Z in the Probate Court, which issued an order vesting the petitioner with temporary custody of Z. Thereafter, the matter was transferred from the Probate Court to the Superior Court, where the parties entered into a stipulated agreement that, inter alia, transferred guardianship of Z to the petitioner. Subsequently, the trial court denied the mother's motion to reinstate her guardianship rights to Z and granted the motion filed by the guardian ad litem to suspend overnight visitation. Specifically, the court found that, even though the mother was capable of adequately providing for Z and there had never been a judicial adjudication of neglect or abuse of Z, reinstatement of the mother's guardianship rights was not in Z's best interests. On appeal, the mother claimed, inter alia, that the trial court violated her fundamental right to the care and custody of Z under the United States constitution by denying her motion for the reinstatement of guardianship without a showing that she was unfit, and without a finding by clear and convincing evidence that Z would be at a substantial risk of physical or emotional harm if the guardianship of him by the petitioner were terminated. *Held*:

1. The respondent mother's claim on appeal that the trial court violated her fundamental right to the care and custody of Z was not properly preserved, the mother having failed to object to the trial court's application of the best interest of the child or fair preponderance of the evidence standards; the mother's constitutional claims on appeal, that it was the court's sole reliance on the best interest of the child standard that violated her fundamental parental rights, and that the court should have required the petitioner to prove physical and emotional harm to Z by clear and convincing evidence in order to defeat the asserted presumption that the mother, as a fit parent, would act in the best interest of Z, were not distinctly raised before the court, where the mother merely requested that the court apply the presumption that reinstatement of her guardianship was in Z's best interest.

2. The respondent mother's unpreserved claims that the trial court failed to apply the constitutional presumption that she, as a fit parent, would act in the best interest of Z, and that the court's failure to apply the clear and convincing evidence standard, which she claimed should apply in reinstatement of guardianship cases concerning a fit parent, violated her constitutional rights to the care and custody of Z, failed under the third prong of *State* v. *Golding* (213 Conn. 233), as the alleged constitutional violation did not exist; the trial court properly determined that the petitioner and Z had presented evidence, including evidence that Z felt unsafe and insecure when he was with the mother for overnight visitation, which rebutted the presumption that it was in Z's best interest to be returned to the mother's care, and the trial court, in determining Z's best interests, properly applied the fair preponderance of the evidence standard required by our statutes, rules of practice, and the precedent of our Supreme Court, which had previously concluded that the fair preponderance of the evidence standard satisfied the constitutional minimum of fundamental fairness in third-party custody disputes.

3. The trial court did not abuse its discretion in finding that it was in Z's best interest to remain in the care, custody, and guardianship of the petitioner, as the court properly considered evidence presented by the petitioner and Z rebutting the presumption that reunification with the respondent mother was in Z's best interest.

Argued September 7—officially released October 30, 2018**

*Procedural History*

Petition by the maternal aunt for the custody and guardianship of the respondent mother's minor child, brought to the Probate Court for the district of Derby, which issued an order vesting the petitioner with temporary custody of the child; thereafter, the matter was transferred to the Superior Court in the judicial district of Ansonia-Milford, where the respondent filed a motion to vacate the order of temporary custody; subsequently, the matter was transferred to the Superior Court in the judicial district of New Haven, Juvenile Matters, where the parties entered into a stipulated agreement that, inter alia, transferred guardianship of the child to the petitioner; thereafter, the court, *Conway, J.*, denied the respondent's motion to reinstate her guardianship rights to the child, granted the motion filed by the guardian ad litem to suspend overnight visitation, and rendered judgment thereon, from which the respondent appealed to this court. *Affirmed.*

*Benjamin M. Wattenmaker*, assigned counsel, for the appellant (respondent mother).

*Albert J. Oneto IV*, assigned counsel, for the appellee (petitioner).

*David B. Rozwaski*, for the minor child.

*Louise Truax* and *Leslie Jennings-Lax* filed a brief for the American Academy of Matrimonial Lawyers, Connecticut Chapter, as amicus curiae.

*Opinion*

BEAR, J. The respondent mother, Kristi F., appeals from the judgment of the trial court denying her motion for reinstatement of guardianship of her minor son, Zakai F. The respondent claims that the court violated her fundamental right to the care and custody of Zakai under the United States constitution by denying her motion (1) without a showing that she was unfit, and (2) without a finding by clear and convincing evidence that Zakai would be at a substantial risk of physical or emotional harm if the current guardianship of him by his aunt, the respondent's sister, were terminated. The respondent additionally claims that the court abused its discretion in concluding that her reinstatement as guardian was not in Zakai's best interest. We disagree with the respondent's claims and, accordingly, affirm the judgment of the court.

The record reveals the following facts and procedural history. In approximately July, 2013, the respondent voluntarily agreed to relinquish, and the Probate Court therefore ordered, temporary guardianship of Zakai to the petitioner, Nikki F., who is the respondent's sister and Zakai's maternal aunt. The parties agreed that Zakai would be cared for temporarily by the petitioner while the respondent pursued employment opportunities, secured funds to obtain appropriate housing, and obtained a reliable vehicle. The respondent reassumed guardianship and care of Zakai in late January or early February, 2014. Shortly after returning to the respondent's care, Zakai was physically assaulted and seriously injured by the respondent's live-in boyfriend, Montreal C., while the respondent was at work.[1] Both the respondent and Montreal C. were criminally charged after the assault. The charges against the respondent were ultimately dropped, but the charges against Montreal C. continued to be prosecuted.[2]

Because of the respondent's work commitments and Zakai's emotional and physical state following Montreal C.'s assault,[3] the respondent agreed that Zakai again would stay temporarily with the petitioner.[4] Approximately four or five days after Zakai was placed in the petitioner's care, the respondent requested that the petitioner again return Zakai to her care. The petitioner did not respond to the respondent's request, but instead, on February 18, 2014, filed a petition for custody and guardianship in the Probate Court for the district of Derby, which issued an ex parte order vesting her with temporary custody of Zakai.

On July 9, 2014, the respondent filed a motion in the Probate Court for transfer of the case to the Superior Court. On July 16, 2014, the motion was granted and the case was transferred to the family division of the Superior Court in Milford. On August 1, 2014, the respondent filed a motion to vacate the Probate Court

order granting the petitioner temporary custody of Zakai. On September 29, 2014, by agreement of the parties, the court ordered that (1) a guardian ad litem be appointed for Zakai; (2) the respondent continue to engage in anger management counseling, therapy, and parenting classes; and (3) the respondent be afforded supervised visitation with Zakai at a location other than the home of the petitioner up to twice a week, subject to the requirements that the length of visitation be determined by the petitioner, visitation occur only at sites acceptable to the petitioner, and only persons acceptable to the petitioner be present during visitation.

In the fall of 2014, the respondent was arrested after an incident in a public park involving the petitioner and a maternal uncle of Zakai, and she was charged with threatening and breach of peace. A criminal protective order was issued barring any contact between the respondent and the petitioner, but reserving for the family division of the Superior Court the issue of the appropriateness of the respondent's continued contact with Zakai.[5] On April 6, 2015, the court granted the petitioner's motion to have the case transferred to the juvenile division of the Superior Court in New Haven.

On June 18, 2015, the court, *Conway, J.*, ordered the Commissioner of Children and Families (commissioner) to conduct a guardianship study. The guardian ad litem moved for a court ordered psychological evaluation of the parties, and that motion was granted on December 29, 2015.

A hearing on the respondent's 2014 motion to vacate the order of temporary custody and her motion to transfer guardianship of Zakai to her was scheduled on September 21 and 22, 2016. On September 21, 2016, however, the court accepted and approved an agreement resolving all outstanding issues. Pursuant to this agreement, the court transferred guardianship of Zakai to the petitioner, ordered unsupervised daytime visits between the respondent and Zakai, and ordered that, until the protective order was resolved or modified, the petitioner would have a third party present in her home while exchanging custody of Zakai with the respondent. The stipulation also required that any further expansions of the visitation schedule, including overnight visits, would be arranged through family therapy.

On June 27, 2017, the respondent filed another motion to reinstate her guardianship rights to Zakai. Subsequently, the court again ordered the commissioner to conduct and complete a guardianship study pursuant to General Statutes § 46b-129 (n). The respondent subsequently filed a motion for overnight visitation on November 3, 2017, which was heard with her motion for reinstatement of guardianship. The hearing on the motions took place on December 5, 11, and 12, 2017. On December 12, 2017, the court elected to hold in

abeyance any definitive ruling on the motion to reinstate the respondent's guardianship rights and instead ordered that Zakai immediately commence overnight visits with the respondent. The court further ordered that the respondent exclusively was to care for Zakai during the overnight visits and that there was to be no contact between Zakai and any unrelated male adults.

On February 2, 2018, the guardian ad litem moved that the court suspend overnight visitation, alleging that the respondent had violated the court's December 12, 2017 order by having an unrelated male stay at her home while Zakai was there. On February 15, 2018, the court reconvened the proceedings to hear testimony and receive other evidence regarding the guardian ad litem's motion on behalf of Zakai to suspend overnight visitation and the respondent's June, 2017 motion to reinstate her guardianship rights. The court heard additional testimony from numerous witnesses on February 15, February 28, and March 1, 2018.

On March 1, 2018, the court issued its memorandum of decision denying the respondent's motion for reinstatement of her guardianship rights and granting the guardian ad litem's motion on behalf of Zakai to suspend overnight visitation. The court found that, despite the fact that there had never been a judicial adjudication of neglect or abuse of Zakai, reinstatement of the respondent's guardianship rights pursuant to General Statutes § 45a-611 (b) was not in Zakai's best interest. The court stated that the respondent had demonstrated that as of March 1, 2018, she was capable of adequately providing for Zakai, that they shared a loving parent-child like bond, and that the respondent and Zakai enjoyed quality time together when Zakai felt he was in a safe environment. The court, however, weighed these findings against testimony and evidence regarding Zakai's emotional and physical debilitation before and after overnight visits with the respondent, and his need for permanency. Specifically, the court credited the testimony of Zakai's first grade teacher, Zakai's therapist, and the petitioner rather than that of the respondent.

The court ultimately found that, "[g]iven the totality of the circumstances in [Zakai's] life, the degree of early childhood trauma he has already experienced, the length of time (four years) he has spent in [the petitioner's] care, his [attention deficit hyperactivity disorder] diagnosis and his behavioral and emotional issues, and the lack of safety and security [he] feels (after three years of working on the [mother-child] bond), to abruptly remove [Zakai] from [the petitioner's] care and home, particularly given his behaviors since December of 2017, would be cruel, inflict devastating loss and pain on Zakai, and likely exacerbate rather than ameliorate [Zakai's] alarming behaviors." The court concluded that, based on a fair preponderance of the evidence, it was not in Zakai's best interest to

return to the respondent's care. This appeal followed.

## I

### A

The respondent claims that the court violated her fundamental right to the care and custody of Zakai under the United States constitution by denying her motion for reinstatement of guardianship (1) without a showing that she was unfit, and (2) without a finding by clear and convincing evidence that Zakai would be at a substantial risk of physical or emotional harm if the current guardianship of him by the petitioner were terminated. The respondent argues that, as applied to the respondent, § 45a-611 violates her fundamental liberty interest in the care and custody of her son. The petitioner counters that the respondent's constitutional arguments were not preserved, the respondent's arguments are not reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), and that the court did not abuse its discretion in determining that reinstatement of guardianship in the respondent was not in Zakai's best interest.

We begin by looking, pursuant to Practice Book § 60-5,[6] to the record to determine whether the respondent's claims were properly raised before the trial court. "[B]ecause our review is limited to matters in the record, we . . . will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 171, 745 A.2d 178 (2000). "[T]he sine qua non of preservation is fair notice to the trial court . . . ." (Citation omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753–54, 66 A.3d 869 (2013). "[T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." Id., 754.

The following additional procedural history is relevant to this issue. During oral argument to the court on December 12, 2017, concerning the respondent's motions for overnight visitation and reinstatement of guardianship, the respondent's counsel made the following statements referencing the best interest of the child standard in the context of the requested transfer of guardianship:

"[The Respondent's Counsel]: [I]n . . . Connecticut, the law [set forth in Practice Book §] 35a-20 . . . requires proof by [a] fair preponderance of the evidence that the circumstances that [led] to the original transfer of guardianship . . . no longer exist. And then, secondly, that it's in the best interest of the child for guardianship to be returned to the parent.

\* \* \*

"So, now we turn to the best interest argument. [The respondent] has an appropriate home. She earns a living and is able to provide for her family. She has a happy, healthy, three year old child, who has absolutely no [Department of Children and Families (department)] involvement. She's long free of the criminal justice system. And even according to [the department] there are no safety concerns. The previous safety concerns that [the department] had, you heard testimony that she believed that she doesn't have those anymore. Zakai expresses to [the respondent] that he wants to be home with her. So, if everything weighs heavily towards reunification, what's left to talk about [is] best interest."

The respondent's § 45a-611 constitutional claim, raised for the first time on appeal, is based, in part, on the court's March, 2018 finding that she had rehabilitated and had become able to care for and support Zakai: "After having carefully consider[ed] the testimony and evidence from the December, 2017 through March 1, 2018 court proceedings, the court finds the reasons and events that prompted the agreed to 2016 transfer of guardianship have been sufficiently ameliorated. [The respondent] is capable of providing Zakai with appropriate housing, nutrition and clothing, and she is capable of meeting his educational, medical and physical safety needs. [The respondent] and Zakai share a loving parent-child like bond, and when [Zakai] feels he is in a safe environment, [the respondent] and [Zakai] enjoy quality time together." (Footnote omitted.) In arguing that the petitioner had to prove, and the court had to find, that the respondent was an unfit parent in order to avoid the return of Zakai to her guardianship, the respondent's attorney has directed this court, inter alia, to *Santosky* v. *Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), which provided that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents . . . ." The respondent also cited additional case law for the proposition that there is a presumption that it is in the best interest of the child to be with his natural parent.[7]

The respondent asserts that many of these same claims were also made to the court during her closing argument on February 28, 2018. Despite the respondent's assertions to the contrary, however, the constitutional claim she now raises on appeal was not distinctly raised before the court. In her argument to the court, the respondent requested that the court apply the presumption that reinstatement of her guardianship was in Zakai's best interest.[8] On appeal, however, the respondent now claims that it was the court's *sole* reliance on the best interest of the child standard that violated her fundamental parental rights. She also claims that the court should have required the petitioner

to prove physical and emotional harm to Zakai by clear and convincing evidence in order to defeat the asserted presumption.

The respondent in effect now argues that because she was found to be a fit parent at the time of trial, her history as a parent who for an extended period of time was unable to provide a safe and secure home for Zakai should be ignored. The court, however, did not ignore, but instead listed in its December 12, 2017 ruling at least some of the respondent's essentially undisputed, more serious parental failings that had caused physical and emotional harm to Zakai. The court found: "Clearly, up until the last year and a half, [the respondent] has struggled to achieve and sustain a lifestyle conducive to having Zakai return to her care. It took her a long time, and some would argue too long, to disengage from [Montreal C.]. . . . [O]ne of the remaining obstacles, that needs to be navigated now, is whether the [respondent's choices] and who she allows Zakai to be cared for and to have contact with are sound and safe choices. [The] court knows that there is no one in this courtroom today, [and] no one more so than [the petitioner and the respondent], that want Zakai to be placed in physical or emotional jeopardy. The terrible, heartbreaking death of [the respondent's] eldest infant daughter, who died while [the respondent] left the daughter in the child's father's care, and then subsequently, Zakai's beating by [Montreal C.], again a caregiver chosen by the mother . . . . These traumatic, tragic events occurred due in large part to choices and exercises in judgment by [the respondent]. Zakai cannot afford to have history repeat itself."

Nowhere in the court proceedings did the respondent claim that application of the best interest of the child standard conflicted with the constitutional presumption that she is a fit parent. In the court proceedings, she made the factual argument that, because she had rehabilitated, it was in Zakai's best interest to be returned to her guardianship. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one. . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Citation omitted; internal quotation marks omitted.) *Albemarle Weston Street*, *LLC* v. *Hartford*, 104 Conn. App. 701, 709–10, 936 A.2d 656 (2007). Additionally, the respondent did not raise any challenge to the fair preponderance standard of proof utilized by the court.[9] Because the respondent did not object to the court's application of the best interest of the child or fair preponderance of the evidence standards, we conclude that the respondent's claim on appeal was not preserved.

B

The respondent requests that, in the event we conclude that her claim is not preserved, we nevertheless review it pursuant to the four part test set forth in *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, supra, 317 Conn. 781. Under *Golding*, the respondent "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40, as modified by *In re Yasiel R.*, supra, 781. "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *State* v. *Britton*, 283 Conn. 598, 615, 929 A.2d 312 (2007). As such, we must address whether the respondent has sufficiently satisfied her burden under the first two *Golding* prongs before we can turn to the merits of her claim on appeal.

"The [respondent] bears the responsibility for providing a record that is adequate for review of [her] claim of constitutional error. If the facts revealed by the record are insufficient, unclear or unambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the [respondent's] claim." *State* v. *Golding*, supra, 213 Conn. 240. "To determine whether the record is adequate to ascertain whether a constitutional violation occurred, we must consider the respondent's alleged claim of impropriety and whether it requires any factual predicates." *In re Azareon Y.*, 309 Conn. 626, 636, 72 A.3d 1074 (2013). In other words, because the respondent claims her fundamental rights as a parent were violated by the court's sole reliance on the best interest of the child standard in denying her motion to reinstate her guardianship rights, the record must adequately reflect that the respondent is not an unfit parent. It is clear from the record that there was never a judicial finding of neglect or abuse as to Zakai by the Probate Court, the family division of the Superior Court, or the juvenile division of the Superior Court, that the petitioner's guardianship of Zakai was with the respondent's consent, and that the respondent was a rehabilitated parent at the time of the filing of her motion. Furthermore, the record includes a thorough memorandum of decision from the court, in addition to transcripts of the entire trial and the exhibits submitted at trial. Accordingly, we conclude that the record is adequate to review the respondent's claim of error. As

such, the first *Golding* prong is satisfied.

"The [respondent] also bears the responsibility of demonstrating that [her] claim is indeed a violation of a fundamental constitutional right." *State* v. *Golding*, supra, 213 Conn. 240. A parent's interest in the care, custody, and control of his or her children has been recognized as "perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *Troxel* v. *Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); see also *Roth* v. *Weston*, 259 Conn. 202, 216, 789 A.2d 431 (2002). The respondent claims this constitutional right has been violated. As such, the respondent also satisfies the second *Golding* prong.

Because we have determined that the respondent has satisfied the first two *Golding* prongs, we turn now to the third prong, namely, whether there has been a constitutional violation that deprived the respondent of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 241. The respondent appears to raise two arguments in regard to her claim of a constitutional violation. We address each argument in turn.

First, the respondent argues that the trial court failed to apply the constitutional presumption that she, as a fit parent, will act in the best interest of Zakai. "While the rights of parents qua parents to the custody of their children is an important principle that has constitutional dimensions . . . we recognize that even parental rights are not absolute." (Citations omitted.) *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 661, 420 A.2d 875 (1979). Although we are cognizant of the respondent's claim that she, having never been adjudicated as an unfit parent, was entitled to a presumption that she would act in Zakai's best interest, such a presumption is not absolute, but may instead be rebutted by contradictory evidence of Zakai's best interest. In the context of child custody disputes, "[i]t is well established as a general rule that the welfare and best interests of the child are controlling elements in the determination of all disputes . . . and the statutes recognizing a right to the custody of the child in either the father or mother must stand aside where the recognition of such a right would materially interfere with the paramount right of the child to have its welfare considered and conserved by the court. The welfare of the child under the above rule may require that its custody be denied the parent and awarded to others." (Internal quotation marks omitted.) *In re Appeal of Kindis*, 162 Conn. 239, 242–43, 294 A.2d 316 (1972).

In *In re Juvenile Appeal (Anonymous)*, our Supreme Court considered an appeal where the child had developed a parent-child relationship with her foster parents. "Balancing all of the evidence presented to it, the Juvenile Court concluded that during the period of separation between the child and her natural mother there

had developed between the child and her foster parents a matured parent-child relationship. Recognizing that cause for commitment no longer existed from the time the petition for revocation was brought, the court nevertheless concluded that separation of the child from her foster family at that time would be contrary to her best interests, and consequently denied the plaintiff's petition for revocation. . . . Clearly the burden is upon the person applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. Once that has been established, as in this case, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests. On this point, when it is a natural parent who has moved to revoke commitment, the state must prove that it would not be in the best interests of the child to be returned to his or her natural parent. While it is certainly true, as we have held, that parents have no natural right to the custody of their children that can prevail over a disposition [a]ffecting the child's best interests; [id., 243]; *In re Appeal of Dattilo*, 136 Conn. 488, 495–96, 72 A.2d 50 (1950); parents are entitled to the presumption, absent a continuing cause for commitment, that revocation will be in the child's best interests unless the state can prove otherwise." (Citation omitted; emphasis omitted; footnotes omitted.) *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 658–60.

In the present case, the court properly considered evidence from both the petitioner and Zakai, through their attorney and guardian ad litem, rebutting the presumption that reunification with the respondent was in Zakai's best interest. The court recognized that the respondent had taken important steps in establishing herself as a fit parent and noted that her accomplishments toward this endeavor "factored heavily" in its December, 2017 order to commence overnight visits. The court found, however, that overnight visitation had subjected Zakai to "unjustifiable and debilitating emotional stress." Zakai's ability to live with the respondent was "hampered by the reality that Zakai does not feel safe and secure in [the respondent's] care." The court credited testimony from Zakai's first grade teacher and therapist in considering the deterioration in Zakai's mental and emotional state because of the overnight visitation. "[B]y increasing Zakai's time in [the respondent's] care and having overnights in [her] home, Zakai feels less safe." The court found important Zakai's need for stability, and his strong desire to know his one "forever" home. (Internal quotation marks omitted.) Thus, because the court properly determined that the petitioner and Zakai rebutted the constitutional presumption that it was in Zakai's best interest to be returned to the respondent's care, the respondent has failed to satisfy the third *Golding* prong as to the constitutional presumption that because she was a fit parent, the best interest standard required that Zakai be

returned to her.

Second, the respondent argues that the "clear and convincing" evidence standard, as articulated by our Supreme Court in *Roth* v. *Weston*, supra, 259 Conn. 232, should apply in reinstatement of guardianship cases concerning a fit parent, and that the trial court's failure to do so violated her constitutional rights to the care and custody of Zakai. Our Supreme Court has noted that "the third prong of *Golding* does not require that there be existing Connecticut precedent already recognizing a constitutional right. Instead, a party satisfies the third prong of *Golding* if he or she makes a showing sufficient to establish a constitutional violation." *In re Yasiel R.*, supra, 317 Conn. 780–81. The question at issue in *In re Yasiel R.* was whether the due process clause of the fourteenth amendment to the United States constitution required that a trial court canvass a parent about his or her decision not to contest exhibits presented against him or her in a parental termination proceeding and to waive his or her right to present a case at trial, a question that had not yet been addressed by our Supreme Court. See id., 781–82.

Similarly, the respondent in the present case raises an argument that conflicts with current statutory and Practice Book provisions and precedent, namely, whether the due process clause of the fourteenth amendment to the United States constitution requires that "when a fit parent . . . seeks to reinstate her guardianship rights in her child, and the guardianship in a third party was established with her consent, the guardian bears the burden of proof to establish by clear and convincing evidence that returning the child to the parent would cause the child to suffer immediate and substantial harm." In making this assertion, the respondent points to the trial court's refusal to reinstate her guardianship rights solely on the basis of the finding that reinstatement was not in Zakai's best interest.

To determine whether the respondent has satisfied the third *Golding* prong as to this argument, we find it helpful to review precedent concerning the legal standards applied in proceedings involving the termination of parental rights and third-party visitation and custody disputes. Before beginning this analysis, however, we find it important to note that, despite underlying similarities, the respondent's claims in the present case are still markedly different from cases involving the state or other third-party actors attempting to infringe on the fundamental rights of a fit, custodial parent in visitation or custody proceedings. The respondent's claims in the present case involve the reinstatement of guardianship rights where the respondent voluntarily consented to guardianship in a third party, and where the respondent and Zakai have not been an intact family for more than four years.

In her brief, the respondent claims that the clear and

convincing evidence standard "is consistent with our Supreme Court's holdings in *Roth* and *Fish* [v. *Fish*, 285 Conn. 24, 939 A.2d 1040 (2008)], which h[e]ld that a third party who seeks to infringe the fundamental rights of a fit parent must prove immediate and substantial harm to the child." The respondent, however, fails to acknowledge the distinction that our Supreme Court has recognized between third-party custody and visitation cases. In *Roth*, the grandmother and the aunt of two minor children brought an action against the children's father seeking third-party visitation rights. *Roth* v. *Weston*, supra, 259 Conn. 204. Our Supreme Court ultimately held "that a nonparent petitioning for visitation pursuant to [General Statutes] § 46b-59 must prove the requisite relationship and harm . . . by clear and convincing evidence." Id., 232.

In *Fish*, which involved a third-party custody petition pursuant to General Statutes § 46b-56b, our Supreme Court held that "third party custody petitions challenge the liberty interest of a parent in a way that is fundamentally different from visitation petitions and that the judicial gloss [our Supreme Court] placed on the visitation statute in *Roth* should not be applied to § 46b-56b because it does not give adequate consideration to the welfare of the child, whose relationship with the parent is at issue in a custody proceeding because of its allegedly harmful effects. This is not the case in a visitation proceeding, in which the child's relationship with the parent has not been placed in issue. The constitutional question in a [third-party] custody proceeding therefore must be framed and resolved in a manner that respects parental rights but that also takes the child's welfare more directly into account." *Fish* v. *Fish*, supra, 285 Conn. 55–56.

Furthermore, in *Fish*, our Supreme Court determined that, contrary to *Roth*, the clear and convincing standard was not constitutionally required under the test set forth by the United States Supreme Court in *Santosky* v. *Kramer*, supra, 455 U.S. 753. *Fish* v. *Fish*, supra, 285 Conn. 66–67. That test provided that "the Court must examine a State's chosen standard [for child custody disputes] to determine whether it satisfies the constitutional minimum of fundamental fairness." (Internal quotation marks omitted.) *Santosky* v. *Kramer*, supra, 756 n.8. Our Supreme Court, therefore, concluded that the fair preponderance of the evidence standard satisfied the constitutional minimum of fundamental fairness in third-party custody disputes. See *Fish* v. *Fish*, supra, 66–67.

Additionally, both *Roth* and *Fish* involved situations in which the rights of custodial parents were challenged by third parties.[10] In contrast, the respondent's argument concerning the proper burden of proof in the present case appears more analogous to the argument in *In re Juvenile Appeal (Anonymous)*, in which our

Supreme Court addressed the due process rights of *noncustodial* parents seeking return of custody of a child. In that case, the court laid out four factors to be considered in determining whether the state has met its burden of showing that a return of custody to a natural parent will be detrimental to the child: "(1) the length of [the child's] stay with [the] foster parents; (2) the nature of [the child's] relationship to [the] foster parents; (3) the degree of contact maintained with the natural parent; and (4) the nature of [the child's] relationship to [the] natural parent." *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 663. In considering these factors, the court afforded great weight to psychological testimony from professionals in determining the emotional state of the child. See id., 667. Our Supreme Court ultimately determined that, "[a]lthough neither the Juvenile Court nor the Superior Court spoke expressly in terms of placing on the state the burden of proving that revocation of commitment would not be in the child's best interests, we cannot say in view of all the evidence that the findings and conclusions of either court are inconsistent with a finding that the state in fact met that burden." Id., 667–68.

The court in the present case similarly determined from the record that Zakai felt unsafe and insecure when he was with the respondent for overnight visitation and that, in the roughly four and one-half years he had been in the petitioner's care, the petitioner had become a mother figure to him. The court also afforded great weight to the testimony of Zakai's first grade teacher and therapist in determining Zakai's mental and emotional state after such overnight visitation.

In terms of establishing the proper burden of proof, our statutes, Practice Book provisions, and Supreme Court precedent recognize that proof by a fair preponderance of the evidence is the applicable standard to be applied in transfer of guardianship proceedings.[11] The best interests of the child requirement is also set forth in § 46b-129 (j) (3), Practice Book § 35a-20 (d),[12] and § 45a-611 (b).[13] Accordingly, the trial court correctly applied the fair preponderance standard instead of the clear and convincing evidence standard.[14]

Because the trial court applied the fair preponderance of the evidence standard required by our statutes, Practice Book provisions, and Supreme Court precedent in determining Zakai's best interest, we find that the respondent has failed to prove any constitutional violation in satisfaction of the third *Golding* prong. Accordingly, we reject her constitutional claim.

II

The respondent's nonconstitutional best interest claim is that the court abused its discretion in concluding that her reinstatement as guardian was not in Zakai's best interest. Her argument that it was in Zakai's best

interest to return to her care, custody, and guardianship was based on the facts as she saw them. After our careful review of the record, we conclude that the court did not abuse its discretion in finding that the best interest of Zakai was to remain with the petitioner. See *In re Diamond J.*, 121 Conn. App. 392, 397, 996 A.2d 296 (pursuant to Practice Book § 35a-16, "[m]otions to modify dispositions are dispositional in nature based on the prior adjudication, and the judicial authority shall determine whether a modification is in the best interests of the child or youth upon a fair preponderance of the evidence . . . ."), cert. denied, 297 Conn. 927, 998 A.2d 1193 (2010).

We are mindful of our limited standard of review. "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . *A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.* . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Emphasis in original; internal quotation marks omitted.) *In re Patricia C.*, 93 Conn. App. 25, 32–33, 887 A.2d 929, cert. denied, 277 Conn. 931, 896 A.2d 101 (2006). Furthermore, we note that "[g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . *We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached.* . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Emphasis in original; internal quotation marks omitted.) Id., 36.

Because we have already found that the court properly considered evidence presented by the petitioner and Zakai, through their attorney and guardian ad litem, rebutting the presumption that reunification with the respondent was in Zakai's best interest; see part I of this opinion; it follows that the court did not abuse its discretion in finding that it was in Zakai's best interest to remain in the care, custody, and guardianship of the petitioner.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** October 30, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent's counsel, in her argument to the trial court after the hearing on the respondent's motion to transfer guardianship, stated that "[t]he whole ordeal began when Zakai suffered a terrible beating at the hands of [Montreal C.]."

[2] In late 2014, the respondent gave birth to her and Montreal C.'s daughter, Zariah. The respondent did not cease contact with Montreal C. until March, 2016, approximately two years after he assaulted Zakai. A major impetus behind the respondent severing contact with Montreal C. was her desire to reunify with Zakai.

[3] From April, 2014, to present, Zakai has been engaged in individual therapy sessions as a result of his exhibited trauma like behaviors following the February, 2014 assault.

[4] Zakai has remained in the continuous care and custody of the petitioner since early February, 2014, a period now in excess of four years. Conversely, the respondent and Zakai have not constituted an intact family since early February, 2014.

[5] In early 2015, the respondent arranged, because of the criminal protective order, for a professional visitation agency to supervise her visits with Zakai.

[6] Practice Book § 60-5 provides in relevant part that "[an appellate] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court."

[7] The presumption referred to by the respondent is viewed by courts in the context of the rights of the child and the duty of the state. Connecticut balances the constitutional rights of parents against its duty and responsibility to protect and ensure the health, safety, welfare, and rights of children. See, e.g., *In re Stephen M.*, 109 Conn. App. 644, 646, 953 A.2d 668 (2008); see also *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362, 378 n.11, 957 A.2d 821 (2008). Our Supreme Court has rejected a similar constitutional challenge to § 46b-129 (b), a statute similar to § 45a-611. See *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 282–84, 293, 455 A.2d 1313 (1983). Our Supreme Court also has recognized that the fair preponderance standard of proof is constitutionally permissible in custody and neglect proceedings because "the child's welfare and safety represents a strong countervailing interest in relative equipoise with the liberty interest of the parent." *Fish* v. *Fish*, 285 Conn. 24, 73–74, 939 A.2d 1040 (2008).

[8] In determining what was in Zakai's best interest, the court viewed the facts of this case in the context of "the child's interest in sustained growth, development, well-being, and in the continuity and stability of [his] environment." (Internal quotation marks omitted.) *In re Brianna C.*, 98 Conn. App. 797, 804, 912 A.2d 505 (2006).

[9] In oral argument before the trial court concerning the respondent's motion for reinstatement of guardianship, the respondent declared that the fair preponderance of the evidence standard, as required by Practice Book § 35a-20 (d), applied to this matter. In its memorandum of decision, the court determined that § 45a-611 (b) governed the proceeding. During oral argument on appeal, the respondent agreed that § 45a-611 (b), Practice Book § 35a-20 (d), and § 46b-129 (n) all set forth the same requirement that there is no further cause for the removal of parental guardianship, e.g., that the parent has been rehabilitated, and that reinstatement is in the best interest of the child. As such, the respondent appears to have conceded that the fair preponderance of the evidence standard is required under § 45a-611 (b). Accordingly, the trial court properly utilized the fair preponderance of the evidence standard when it determined that § 45a-611 (b) applied.

[10] Our Supreme Court noted in *Fish* that its decision did "not address situations in which the state seeks temporary custody of the child; see General Statutes § 46b-129; or removal of the child from the custody of the child's parents. See General Statutes § 45a-610." *Fish* v. *Fish*, supra, 285 Conn. 27 n.1.

[11] General Statutes § 46b-129 (j) (3), for example, provides in relevant part: "If the court determines that the commitment should be revoked and the child's . . . legal guardianship . . . should vest in someone other than the respondent parent, parents or former guardian . . . there shall be a

rebuttable presumption that an award of legal guardianship . . . upon revocation to . . . any caregiver or person or who is, pursuant to an order of the court, the temporary custodian of the child . . . at the time of the revocation . . . shall be in the best interests of the child . . . and that such caregiver is a suitable and worthy person to assume legal guardianship . . . upon revocation . . . . The presumption may be rebutted by a preponderance of the evidence that an award of legal guardianship . . . to . . . such caregiver would not be in the child's . . . best interests and such caregiver is not a suitable and worthy person. . . ."

Our Supreme Court used the fair preponderance of the evidence standard in reviewing a testamentary designation of a guardian: "We do conclude, however, that the fact that the [testamentary guardians] suffered such trauma, and that it affected them so significantly that they felt that they could not assume guardianship of Joshua S., demonstrates, by a fair preponderance of the evidence, that it would be damaging, injurious or harmful and, therefore, detrimental to Joshua S. to be placed with the [testamentary guardians], thereby rebutting the presumption favoring the testamentary guardians." *In re Joshua S.*, 260 Conn. 182, 208, 796 A.2d 1141 (2002).

Additionally, Practice Book § 35a-12A (b) provides in pertinent part: "In cases in which a motion for transfer of guardianship seeks to vest guardianship of a child or youth in any relative who is the licensed foster parent for such child or youth, or who is, pursuant to an order of the court, the temporary custodian of the child or youth at the time of the motion, the moving party has the burden of proof that the proposed guardian is suitable and worthy and that transfer of guardianship is in the best interests of the child. In such cases, there shall be a rebuttable presumption that the award of legal guardianship to that relative shall be in the best interests of the child or youth and that such relative is a suitable and worthy person to assume legal guardianship. The presumption may be rebutted by a preponderance of the evidence that an award of legal guardianship to such relative would not be in the child's or youth's best interests and such relative is not a suitable and worthy person. . . ."

[12] Practice Book § 35a-20 (d) provides in relevant part: "The party seeking reinstatement of guardianship has the burden of proof to establish that cause for transfer of guardianship to another person or agency no longer exists. The judicial authority shall then determine if reinstatement of guardianship is in the child's or youth's best interest."

[13] General Statutes § 45a-611 (b) provides in relevant part: "If the court determines that the factors which resulted in the removal of the parent have been resolved satisfactorily, the court may remove the guardian and reinstate the parent as guardian of the person of the minor, if it determines that it is in the best interests of the minor to do so. . . ."

[14] We also note that because our decision does not involve the permanent termination of the respondent's parental rights to Zakai, but rather is focused on a determination of whether Zakai is ready to be reunited with the respondent, a preponderance of the evidence standard is the more appropriate burden of proof.

––––––––––––––––––––––